ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
STEPHEN I. GOORVITCH (California Bar #199325)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2476
    Facsimile: (213) 894-6269
    Email:    Stephen.Goorvitch@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 11-CR-199-PA |
| Plaintiff, | <u>GOVERNMENT'S SENTENCING POSITION - PART I</u> |
| v. | Hearing Date/Time: |
| MARK ROY ANDERSON, | **January 10, 2012, at 10:00 a.m.** |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorney Stephen I. Goorvitch, hereby submits Part I of its Sentencing Position in the above-entitled action.[1] The sentencing is currently scheduled for Tuesday, January 10, 2012, at 10:00 a.m. This

---

[1] Because Part II of the Government's Sentencing Position contains personal and financial information about the victims, the government intends to file it under seal.

sentencing position is based on the attached memorandum of points and authorities, the pre-sentence investigation report (the "PSR"), the pleadings and exhibits associated with the government's ex parte application to revoke defendant's bond, the files and records in this case, and any argument at the sentencing hearing.

Dated: December 7, 2011

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division


 /s/ Stephen I. Goorvitch
STEPHEN I. GOORVITCH
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION..............................................1

II. DEFENDANT'S BACKGROUND....................................1

    A.   Defendant's Educational and
        Professional Background...........................1

    B.   Defendant's First Set of
        Criminal Convictions..............................2

        1.   Count One - Grand Theft.......................2

        2.   Count Two - Grand Theft.......................2

        3.   Count Three - Grand Theft.....................2

        4.   Counts Four and Seven -
            Preparing False Evidence......................3

        5.   Count Five - Grand Theft......................3

        6.   Count Six - Attempted Grand Theft.............3

        7.   Count Eight - Grand Theft.....................3

        8.   Count Nine - Attempted Grand Theft............3

    C.   Defendant's Second Set of
        Criminal Convictions..............................4

    D.   Defendant's Third Set of
        Criminal Convictions..............................4

    E.   Defendant's LASIK Eye
        Surgery Centers...................................6

    F.   Defendant's Designer Labels Business................6

    G.   The SEC's Civil Judgment Against Defendant..........6

III. DEFENDANT'S CURRENT OFFEMSE..............................7

    A.   The Offense Conduct.................................7

    B.   Post-Arrest Proceedings.............................7

**TABLE OF CONTENTS (cont.)**

| | | Page |
|---|---|---|
| IV. | SENTENCING GUIDELINES CALCULATIONS | 8 |
| | A. Base Offense Level: 7 | 8 |
| | B. Loss Amount: +20 | 8 |
| | C. Number of Victims: +2 | 9 |
| | D. Money Laundering Enhancement: +1 | 9 |
| | E. Violation of Texas Injunctions: +2 | 9 |
| | F. Obstruction of Justice: +3 | 10 |
| V. | SENTENCING RECOMMENDATION | 10 |
| VI. | RESTITUTION | 12 |
| VII. | SUPERVISED RELEASE | 12 |
| VIII. | DISMISSAL OF REMAINING COUNTS AND EXONERATION OF BOND | 13 |
| IX. | CONCLUSION | 13 |

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

I.

INTRODUCTION

Mark Roy Anderson ("defendant") pleaded guilty to charges relating to an oil investment fraud scheme involving at least 21 victims and resulting in losses of at least $9.5 million. The PSR has determined that the total offense level is 32 and that defendant falls within Criminal History Category III based on prior state convictions for forgery, grand theft, and preparing false evidence and prior federal convictions for wire fraud. Thus, the applicable sentencing range is 151 to 188 months. The government concurs in the PSR's findings and respectfully recommends that the Court sentence defendant to 151 months imprisonment.[2]

II.

DEFENDANT'S BACKGROUND

A. <u>Defendant's Educational and Professional Background</u>

Defendant obtained a bachelor degree from the University of Nevada at Reno in 1976 and a law degree from McGeorge Law School in 1981. <u>See</u> PSR ¶¶ 83-84, 102-03. Defendant was admitted to the bar in Nevada, where he practiced law before moving to California, where he practiced law without a license in 1982 and 1983. <u>See</u> PSR ¶ 84. Defendant was disbarred by the State Bar of Nevada in 1993. <u>See</u> PSR ¶ 105. Defendant is currently 57 years

---

[2] Should the Court determine that a different sentencing range applies to this case, the government would recommend that the Court sentence defendant to the low-end of that range or 84 months imprisonment, whichever is greater, pursuant to Paragraph 3(e) of the plea agreement. <u>See</u> Plea Agreement at ¶ 3(e).

old. See PSR ¶ 79.

B. <u>Defendant's First Set of Criminal Convictions</u>

Defendant was charged with five counts of grand theft, two counts of preparing false evidence, and two counts of attempted grand theft in Case Number LA003811. See PSR ¶¶ 57-67. Defendant pleaded guilty to all of these counts and was sentenced to four years in state prison. See PSR ¶ 57.

    1. <u>Count One - Grand Theft</u>

On July 25, 1988, defendant induced a victim to give him a check for $400,000 in exchange for an interest in an office building in Beverly Hills that defendant represented that he owned. See PSR ¶ 12. However, defendant never owned the building. See id.

    2. <u>Count Two - Grand Theft</u>

On October 14, 1988, defendant induced a victim to give him a check for $175,000 in exchange for an interest in a property in La Jolla, California. See PSR ¶ 61. Defendant did not own that building. See id.

    3. <u>Count Three - Grand Theft</u>

Defendant agreed to exchange a property that he did not own for a house in Encino, California. See PSR ¶ 62. By the time the fraud was discovered, he had already transferred the Encino home to a third party who had taken out a $350,000 loan against the property. See id.

4. <u>Counts Four and Seven - Preparing False Evidence</u>

Defendant manufactured two false letters for use in civil trials, forging the victim's signature. See PSR ¶ 63. Specifically, these (false) letters purportedly released defendant and the respective victim from mutual counter claims. See id.

5. <u>Count Five - Grand Theft</u>

A victim sold defendant two properties. See PSR ¶ 64. Defendant recorded the deeds but refused to assume the loan or make payments to the victim. See id.

6. <u>Count Six - Attempted Grand Theft</u>

Defendant offered to purchase an apartment building in Glendale, California. See PSR ¶ 65. However, defendant did not provide sufficient funds to the escrow company and never wired the promised amount of money. See id. When the victim canceled escrow, defendant caused a <u>lis</u> <u>pendens</u> to be filed. See id.

7. <u>Count Eight - Grand Theft</u>

Defendant transferred to the victim a trust deed from an office building he owned in Mission Valley. See PSR ¶ 66. Defendant failed to make payments on the building, per the escrow instructions, but kept the rent proceeds. See id.

8. <u>Count Nine - Attempted Grand Theft</u>

Defendant entered escrow to purchase six and one half acres of land in Agoura, California for approximately $1.5 million. See PSR ¶ 67. Defendant's checks to escrow were returned for insufficient funds. See id. Defendant then negotiated a better

deal, but when the victim sought to cancel the amended deal, defendant refused to sign the necessary paperwork. See id.

C.    Defendant's Second Set of Criminal Convictions

While defendant was released on bond in Case Number LA003811, he committed forgery and grand theft, resulting in charges in Case Number LA007048. See PSR ¶ 53 (defendant "admitted the special allegation[] of . . . felony committed while released on bail."). Specifically, defendant pledged a property as collateral for a loan of $120,000. See PSR ¶ 55. When the lender discovered that there was already an existing loan on the property due the next day, defendant claimed that he would have the first lender provide documentation extending the first loan. See id. Instead, defendant provided a false document purportedly from the first lender. See id.

Defendant pleaded guilty to these charges. See PSR ¶ 52. The court sentenced him to 32 months in state prison, to run consecutively with the four year sentence in Case Number LA003811. See id.[3]

D.    Defendant's Third Set of Criminal Convictions

Between 1983 and 1986, defendant devised and executed a Ponzi-type scheme to defraud investors who invested in partnerships to purchase and restore historic buildings around

---

[3] Although Case Numbers LA003811 and LA007048 are separate cases stemming from different criminal conduct, defendant receives criminal history points for only one of the two cases, pursuant to U.S.S.G. § 4A1.2(a)(2) ("If there is no intervening arrest, prior sentences are counted separately unless . . . the sentences were imposed on the same day.").

the country.  See PSR ¶ 72; see also United States v. Mark Roy Anderson, 993 F.2d 1435, 1436-37 (9th Cir. 1993).  Defendant formed approximately 20 limited partnerships involving about 2,000 investors, following which he commingled funds from the various projects and diverted funds from one project to pay for another project.  See PSR ¶ 72.  Defendant perpetrated this scheme while claiming to be a California attorney.  See id.

Defendant pleaded guilty and agreed to pay $6,801,035 in restitution relating to three properties.  See id.  However, the total losses from the scheme were $47,582,818.  See id.  The district court (Tevrizian, J.) sentenced defendant to 84 months imprisonment.  See PSR ¶ 68; see also Anderson, 993 F.2d at 1437. Defendant appealed, and the Ninth Circuit vacated the convictions, finding that defendant's plea was not voluntary. See PSR ¶ 70; Anderson, 993 F.2d at 1437-38.  On remand, defendant filed a motion for a Kastigar hearing, which the district court denied.  See United States v. Mark Roy Anderson, 79 F.3d 1522, 1524-31 (9th Cir. 1996).  The district court (Tashima, J.) again sentenced defendant to 84 months imprisonment, to run concurrently with the sentences imposed in Case Numbers LA003811 and LA007048.  Defendant appealed the district court's ruling on the Kastigar hearing, which the Ninth Circuit affirmed.  See id.

Defendant was charged on April 5, 1991 and initially sentenced on July 1, 1991.  See PSR ¶¶ 68, 70.  Defendant was paroled from federal custody on March 10, 1996.  See PSR ¶ 71.

Based on these dates, the government believes that defendant served less than five years of his federal sentence due to federal parole, which has since been abolished.

E.   Defendant's LASIK Eye Surgery Centers

Following his release from prison, from 1996 to 1999, defendant started a chain of LASIK eye surgery centers. See PSR ¶ 87. The business collapsed after defendant's business partner was arrested for Medicare and MediCal fraud. See id.

F.   Defendant's Designee Labels Business

Defendant then started a designer labels business, building the company into a chain of 36 stores. See PSR ¶ 88. The business collapsed in 2001 to 2002. See id.

G.   The SEC's Civil Judgment Against Defendant

On September 12, 2007, the U.S. Securities and Exchange Commission (the "SEC") filed a civil enforcement action against defendant and several of his companies, including Terax Energy, Inc. and Westar Oil, Inc. See Securities and Exchange Commission v. Terax Energy, Inc., et al., Case No. 07-CV-1554-BD. The complaint alleged that defendant caused his companies to issue materially false and misleading press releases in connection with the offer, purchase, and sale of securities. See id.

On September 12, 2007, the district court issued a temporary restraining order against defendant. See id. On September 20, 2007, the district court issued an agreed preliminary injunction against defendant. See id. On September 30, 2008, the district

6

court issued an agreed permanent injunction against defendant. See id.

### III.
### DEFENDANT'S CURRENT OFFENSE

A.  The Offense Conduct

Beginning in or about March 2006, defendant began defrauding victims by representing that he would invest their money in one of several oil companies, including Westar Oil, Inc. and Terax, Inc. See PSR at ¶ 14. Defendant also represented that he would use their money to fund oil ventures, including oil rigs in Oklahoma and oil leases in Oklahoma and Kern County, California. See id. In total, defendant defrauded at least 21 victims out of at least $9.5 million. See PSR at ¶ 22.

Defendant did not spend victims' funds as promised. See PSR at ¶ 17. For example, defendant used over $3 million that he fraudulently obtained from B.W. and R.W. to satisfy the judgment in the SEC civil case in the Northern District of Texas. See Government's Sentencing Position, Part II. Defendant used the rest of the funds for lavish living expenses and an investment in the former Prego Restaurant in Beverly Hills, California. See PSR at ¶ 17.

B.  Post-Arrest Proceedings

Following his arrest, defendant was released on bond. However, defendant continued to commit additional crimes, soliciting funds from two investors based on a fraudulent oil rig scheme. The government filed an emergency ex parte application

to revoke defendant's bond, which the Court granted on April 28, 2011. Subsequently, defendant pleaded guilty to one count of wire fraud and one count of money laundering relating to one victim, P.L. See PSR at ¶¶ 1-3.

## IV.
## SENTENCING GUIDELINES CALCULATIONS

A.  Base Offense Level: 7

Defendant pleaded guilty to one count of wire fraud, which has a statutory maximum sentence of 20 years imprisonment. See PSR at ¶ 35. Therefore, the base offense level is 7, pursuant to U.S.S.G. § 2B1.1(a). See id.

B.  Loss Amount: +20

The government believes that the total losses in the case are at least $9.5 million and concurs with the PSR's findings that a 20-level loss enhancement applies. See PSR at ¶ 36. Counsel have met-and-conferred with respect to sentencing. While defense counsel (acting in good faith) has not committed to a position with respect to this enhancement, the government believes that the only dispute relating to the total loss amount may be whether B.W. and R.W. were, in fact, defrauded. Should the Court decide that they were not victims, the total losses would be less than $7 million, resulting in only an 18-level enhancement. Therefore, at this stage, the government will rely exclusively on the PSR with respect to loss, except with respect to whether defendant defrauded B.W. and R.W. Because the exhibits relating to that issue contain victims' names and

financial information, the government will address the relevant issues in Part II of its Sentencing Position.

C.  <u>Number of Victims: +2</u>

The government concurs with the PSR's finding that there are over 10 victims, resulting in a two-level enhancement. <u>See</u> PSR at ¶ 37. Because the number of victims may not be in dispute at sentencing, the government will rely exclusively on the PSR unless defendant raises a credible challenge to the applicability of this enhancement.

D.  <u>Money Laundering Enhancement: +1</u>

Defendant pleaded guilty to one count of money laundering. <u>See</u> PSR at ¶ 40. Therefore, there is a one-level enhancement. <u>See</u> <u>id.</u>

E.  <u>Violation of Texas Injunctions: +2</u>

The injunctions issued by the U.S. District Court for the Northern District of Texas prohibit defendant from violating the anti-fraud provisions of the federal securities laws or distributing securities through the mails or instrumentalities of interstate commerce without a registration statement or applicable exemption. Subsequently, defendant violated the injunctions in his transmission of fraudulent stock to E.S. <u>See</u> PSR at ¶¶ 20. Therefore, a two-level enhancement applies. <u>See</u> PSR at ¶ 38.

The government assumes that defendant will challenge this enhancement at sentencing. Because the exhibits relating to this enhancement reference E.S.'s name and financial information, as

9

well as details of her private life, the government will address the relevant issues in Part II of its Sentencing Position.

F.   Obstruction of Justice: +3

The government filed an ex parte application to revoke defendant's bond based on additional crimes he committed while on pretrial release. Specifically, defendant defrauded N.Z. and C.L. of $125,000 by claiming to have access to an oil rig. See PSR at ¶ 21. The Court held a hearing on April 28, 2011, following which it revoked defendant's bond and remanded him into custody.

The government assumes that defendant will challenge this enhancement at sentencing. The government relies on the Court's prior finding that defendant violated the terms and conditions of his release on bond, but also incorporates by reference its ex parte application and exhibits (filed as Docket Entry #41).

G.   Timely Acceptance of Responsibility: -3

Defendant pleaded guilty sufficiently early to save the government resources in preparing for trial. See PSR at ¶ 45. Therefore, the government moves for the third point for timely acceptance of responsibility.

V.

SENTENCING RECOMMENDATION

The government believes that a sentence of 151 months imprisonment will satisfy the dictates of 18 U.S.C. § 3553(a). This sentence is almost twice as much as his prior federal sentence of 84 months and more than twice the amount of time

defendant actually served on that sentence.  Therefore, it is stringent enough to reflect the seriousness of defendant's offense and to afford adequate deterrence to criminal conduct. See 18 U.S.C. §§ 3553(a)(1) and (2)(A),(B).

A sentence of 151 months imprisonment is also sufficient to protect the public from further criminal conduct by defendant. Defendant's criminal history demonstrates that he repeatedly engages in schemes to defraud.  A sentence of over twelve years will prevent defendant from victimizing the public.  See 18 U.S.C. § 3553(a)(2)(C).

A sentence of 151 months imprisonment will provide sufficient opportunity for defendant to receive any necessary educational or vocational training, as well as medical care and correctional treatment.  See 18 U.S.C. § 3553(a)(2)(C).  The government notes that defendant may benefit from treatment for drug and alcohol abuse.  See id.

Finally, the government notes that because defendant is 57 years old, see PSR at ¶ 79, a sentence of 151 months imprisonment would result in his incarceration for much of the rest of his life.  While the Court may feel that defendant's crimes are egregious, especially in light of his criminal history, the government notes that defendant accepted responsibility and pleaded guilty sufficiently early to save the government resources.  Because defendant pleaded guilty, the undersigned Assistant U.S. Attorney and the case agents were able to handle additional matters that they otherwise would not have been able

to handle. The government takes this into account in recommending a sentence of 151 months imprisonment.

## VI.
## RESTITUTION

The government commends the probation officer's diligent efforts to decipher the network of victims and the applicable credits to defendant based on prior restitution. However, the government ultimately does not agree with the victim and restitution information contained in Attachment A to the PSR. Specifically, Attachment A does not credit defendant for restitution that has already been made to some of the victims, and it may omit certain victims and losses. Therefore, the government will file a short brief prior to sentencing with the correct restitution information.

## VII.
## SUPERVISED RELEASE

The government respectfully recommends that the Court impose the maximum three-year term of supervised release. As is clear from defendant's criminal history, there is a significant risk of recidivism. Moreover, the maximum term of supervision is necessary to ensure that defendant makes his best efforts to pay restitution.

## VIII.
## DISMISSAL OF REMAINING COUNTS AND EXONERATION OF BOND

Finally, at the sentencing hearing, the government intends to dismiss the first indictment, as well as Counts Two through

Eleven and Thirteen through Seventeen of the First Superseding Indictment.  The government also intends to move to exonerate the bond so the posted property may be returned to James and Mollie Siri.  <u>See</u> Docket Entry #40.

## IX.
## CONCLUSION

Based on the foregoing, the government respectfully recommends that the Court impose a sentence of 151 months imprisonment, and a three-year period of supervised release.

Dated:     December 7, 2011

                  ANDRÉ BIROTTE JR.
                  United States Attorney

                  ROBERT E. DUGDALE
                  Assistant United States Attorney
                  Chief, Criminal Division


                  <u>/s/ Stephen I. Goorvitch</u>
                  STEPHEN I. GOORVITCH
                  Assistant United States Attorney

                  Attorneys for Plaintiff
                  UNITED STATES OF AMERICA